**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**SELWA ALSHABALEY,**

**Plaintiff,**

**v.**

**AMERICAN AIRLINES, INC.,**

**Defendant.**
_______________________________/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Selwa Alshabaley ("Plaintiff" or "Ms. Alshabaley") sues Defendant American Airlines, Inc. ("American Airlines" or "Defendant") for disability discrimination, failure to provide reasonable accommodation, and retaliation under the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. §§ 12101 et seq., and the Florida Civil Rights Act of 1992, as amended ("FCRA"), Fla. Stat. §§ 760.01 et seq., and alleges as follows:

## I.

## PARTIES

1. At all times material hereto, Ms. Alshabaley is an individual residing in the Middle District of Florida, Tampa Division.

2. At all times material hereto, Ms. Alshabaley was employed by American Airlines as a Customer Service Agent/Gate Agent at Tampa International Airport, Tampa, Florida.

3. American Airlines is a Delaware corporation, with its principal place of business in Texas.

4. At all times material hereto, American Airlines was doing business at Tampa International Airport in the Middle District of Florida, Tampa Division where Plaintiff was employed.

5. American Airlines is an "employer" within the meaning of the ADA, 42 U.S.C. § 12111(5), and the FCRA, Fla. Stat. § 760.02(7), in that it employs fifteen (15) or more employees.

## II.

## JURISDICTION AND VENUE

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12117(a). This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

7. Venue is proper in the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to the claims occurred at Tampa International Airport in Hillsborough County, Florida.

## III.

## CONDITIONS PRECEDENT / EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. On or about September 15, 2025, Ms. Alshabaley timely filed a Charge of Discrimination with the EEOC and dual-filed with the Florida

Commission on Human Relations ("FCHR") alleging disability discrimination and retaliation under the ADA and FCRA.

9. Ms. Alshabaley filed Amendments to her Charge, including on or about November 19, 2025, January 7, 2026, January 28, 2026, and March 10, 2026, encompassing additional continuing acts of discrimination and retaliation.

10. Following an investigation, the EEOC found reasonable cause to believe that American Airlines violated the ADA with respect to matters alleged in Ms. Alshabaley's charge of discrimination.

11. On or about June 7, 2026, the EEOC issued a Notice of Right to Sue. [1]

12. This Complaint is timely filed within ninety (90) days of Plaintiff's receipt of that Notice.

13. All conditions precedent to the filing of this action have been performed, have occurred, or have been excused.

14. More than one hundred eighty (180) days have elapsed since the filing of Plaintiff's charge with the FCHR without a determination, affording Plaintiff the right to bring this action under the FCRA.

---

[1] Plaintiff has an additional charge which is still being investigated by the EEOC and upon issuances of a Notice of Right to Sue, Plaintiff will promptly amend her compliant.

## IV.

## FACTUAL ALLEGATIONS

**A. Ms. Alshabaley's Employment and Disability**

15. American Airlines hired Ms. Alshabaley as a Customer Service Agent on February 9, 2015.

16. Ms. Alshabaley has physical and psychological disabilities that substantially limit one or more of her major life activities, including walking, safely navigating distances, and functioning in environments that exacerbate her disabilities. Ms. Alshabaley also has a record of such disabilities.

**B. The June 2025 Incident**

17. On or about June 7, 2025, while Ms. Alshabaley was working her scheduled shift at Tampa International Airport, an employee of a third-party vendor engaged in threating conduct and vandalized her vehicle in the employee parking lot.

18. Ms. Alshabaley reported the vandalism to the Tampa International Airport Police and American Airlines.

19. The offending employee was arrested, charged with felony criminal mischief, and ultimately sentenced to 36 months of probation.

20. This incident severely exacerbated Ms. Alshabaley's pre-existing disabilities, causing significant psychological and physical symptoms that substantially limited her ability to safely navigate the employee parking lot and shuttle area.

21. Ms. Alshabaley communicated about the issue with a representative of American Airlines' Employee Assistance Program who recommended that Ms. Alshabaley request a reasonable accommodation of not parking in the employee parking lot where the incident occurred.

**C. Ms. Alshabaley's Request for Reasonable Accommodation**

22. On or about June 12, 2025, Ms. Alshabaley requested a reasonable accommodation in the form of parking closer to the terminal, specifically in Lot 6, an auxiliary lot connecting directly to Terminal F where American Airlines operates.

23. On June 16, 2025, American Airlines was advised by Joel Feldman, Senior Manager of Airport Concessions for the Tampa International Airport Aviation Authority, that Aviation Authority Standard Procedure SP303.02 required American Airlines, as the tenant employer, to accommodate Ms. Alshabaley within its assigned parking spaces at Airside F, and that "the employee should be accommodated amongst American's assigned spaces at Airside F."

24. On June 16, 2025, the General Manager of American Airlines for Tampa International Airport stated to Ms. Alshabaley that she did not have a disability, that she should just take a week off of work without pay, that the manager's lot is not for employees, that others will be jealous, that Ms. Alshabaley should have a shuttle buddy, to call a friend when parking, and that the access to Lot 6 is only temporary and only for one week.

25. Ms. Alshabaley submitted an accommodation request through American Airlines' accommodations process, supported by a written medical note from her healthcare provider.

26. Ms. Alshabaley's healthcare provider stated that her condition substantially limited major life activities and that an accommodation of a parking space close to her work location was medically necessary.

27. At the time of Ms. Alshabaley's request and through this process, American Airlines had several dedicated parking spaces at Lot 6 which were open and unoccupied.

**D. American Airlines' Failure to Accommodate and Denial**

28. Despite Ms. Alshabaley's documented medical need, American Airlines refused to grant the reasonable accommodation.

29. Initially, American Airlines issued only temporary, week-by-week parking passes, repeatedly characterizing any access as "temporary."

30. American Airlines expressed that a permanent accommodation would not be granted.

31. American Airlines advised the Tampa International Airport Aviation Authority that it did not wish to accommodate Ms. Alshabaley's request.

32. On June 30, 2025, the Aviation Authority informed American Airlines that "[t]his situation rests between American Airlines and its employee for resolution."

33. Because American Airlines refused to provide a continuous accommodation, Ms. Alshabaley was compelled to take Voluntary Time Off on days when no temporary pass was available, resulting in lost income and benefits.

34. On or about July 15, 2025, because American Airlines continued to refuse to provide a reasonable accommodation, Ms. Alshabaley was forced to take a medical leave of absence.

35. On or about July 31, 2025, while Ms. Alshabaley remained on approved medical leave, American Airlines denied Ms. Alshabaley's accommodation request, claiming "undue burden."

36. This claim was false and pretextual as it did not represent an undue burden to allow the reasonable accommodation of a parking accommodation.

37. On or about August 21, 2025, following Ms. Alshabaley's continued advocacy for her accommodation rights, American Airlines sent a multi-page correspondence to Ms. Alshabaley's treating health care provider questioning whether her functional limitations were consistent with statements Ms. Alshabaley had made during the interactive process, and using those purported inconsistencies to further delay and obstruct the accommodation process.

38. Ms. Alshabaley provided American Airlines with a response from her healthcare provider dated August 28, 2025, which again confirmed Ms. Alshabaley's diagnosis and disability. The letter also confirmed that Ms.

Alshabaley was fully capable of performing all essential functions of her position when not exposed to environmental conditions associated with her traumatic experience.

39. On or about November 7, 2025, American Airlines notified Ms. Alshabaley that it had approved the Lot 6 accommodation for a shift of 4:00 a.m. to 10:30 a.m.

40. At that time, Ms. Alshabaley's scheduled work shift was 12:30 p.m. to 7:00 p.m.

41. American Airlines delayed Ms. Alshabaley's return because it refused to allow her to work her scheduled shift and instead required that she only work the 4:00 a.m. to 10:30 a.m. shift.

42. Ms. Alshabaley was only provided an accommodation to work the 4:00 a.m. to 10:30 a.m. shift.

43. American Airlines did not allow Ms. Alshabaley to work a variety of shifts like other employees, but instead required her to work the 4:00 a.m. to 10:30 a.m. shift.

44. American Airlines did not allow Ms. Alshabaley to work overtime shifts like other employees.

45. On or about January 2026, American Airlines issued a command that all overtime for Ms. Alshabaley had to be approved by the General Manager. For all other employees, their overtime did not require approval of the General Manager.

46. On multiple occasions, Ms. Alshabaley was not permitted to work overtime when other employees were permitted to work overtime.

**E. Continuing Acts of Discrimination and Retaliation After EEOC Charge Filing**

47. Ms. Alshabaley requested a reasonable accommodation and also filed an EEOC Charge of Discrimination on or about September 15, 2025.

48. Following this protected activity, American Airlines has engaged in a further pattern of retaliatory conduct.

49. On multiple occasions American Airlines denied Ms. Alshabaley an overtime opportunity available to similarly situated employees without disabilities or without pending EEOC charges, in retaliation for her protected activity.

50. On multiple occasions American Airlines also denied Ms. Alshabaley access to her accommodation parking space, in retaliation for her protected activity.

51. On multiple occasions American Airlines subjected Ms. Alshabaley to a heightened level of supervision in retaliation for her protected activity.

52. On or about January 5, 2026, American Airlines required Ms. Alshabaley to submit to a drug test.

53. Upon information and belief, this drug test was issued not for any legitimate operational reason but in retaliation for Ms. Alshabaley's EEOC charge and accommodation requests.

54. American Airlines subsequently acknowledged the drug test was required in error, confirming that no legitimate basis existed for this action.

55. Throughout the relevant period, American Airlines failed to engage in a good-faith interactive process. The process was marked by unreasonable delays, shifting justifications, direct contact with Plaintiff's treating psychiatrist to manufacture documentation issues, and a persistent refusal to reasonably accommodate Ms. Alshabaley's disability.

## CAUSES OF ACTION

## COUNT I

## DISABILITY DISCRIMINATION

**Americans with Disabilities Act, 42 U.S.C. §§ 12112(a) and 12112(b)(5)**

56. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 55 as though fully set forth herein.

57. At all times material hereto, Ms. Alshabaley was a qualified individual with a disability within the meaning of the ADA. Her disabilities substantially limit one or more major life activities, including walking, safely navigating distances, and functioning without anxiety-related impairment. She also has a record of such impairments.

58. Ms. Alshabaley was qualified to perform the essential functions of her Customer Service Agent position, with or without a reasonable accommodation. Throughout the relevant period, she performed those essential functions whenever she was provided the requested accommodation or was otherwise not required to navigate the location where the June 2025 assault occurred.

59. American Airlines had actual knowledge of Ms. Alshabaley's disability and her need for an accommodation no later than June 12, 2025, when she submitted her initial accommodation request and supporting medical documentation.

60. Ms. Alshabaley made timely, documented, and repeated requests for the reasonable accommodation of a dedicated parking space in Lot 6 at TPA, directly adjacent to her work location at Airside F.

61. The requested accommodation was objectively reasonable.

62. American Airlines violated the ADA by refusing to provide a reasonable accommodation.

63. Independent of and in addition to its failure to accommodate, American Airlines treated Ms. Alshabaley less favorably than similarly situated employees without disabilities in the terms, conditions, and privileges of her employment, including but not limited to by denying overtime opportunities available to non-disabled employees, subjecting her to unjustified drug testing, and imposing other terms and conditions of employment not suffered by other employees.

64. As a direct and proximate result of American Airlines' unlawful discrimination, Ms. Alshabaley has suffered and continues to suffer lost wages and benefits, emotional distress, mental anguish, aggravation of her disabilities, pain and suffering, loss of enjoyment of life, and other economic and non-economic losses.

65. American Airlines' discriminatory conduct was willful, malicious, or in reckless disregard of Ms. Alshabaley's federally protected rights, entitling her to punitive damages pursuant to 42 U.S.C. § 1981a.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory damages, punitive damages, back pay, front pay or reinstatement, attorneys' fees and costs pursuant to 42 U.S.C. § 12205, and all other relief this Court deems just and proper.

**COUNT II**

**DISABILITY DISCRIMINATION**

**Florida Civil Rights Act, Fla. Stat. § 760.10(1)**

66. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 55 as though fully set forth herein.

67. The FCRA prohibits employers from discriminating against qualified individuals with disabilities in the terms, conditions, and privileges of employment, including by failing to provide reasonable accommodations. Fla. Stat. § 760.10(1). The FCRA is construed in conformity with the ADA. *See* Brand v. Florida Power Corp., 633 So. 2d 504 (Fla. 1st DCA 1994); City of Hollywood v. Hogan, 986 So. 2d 634 (Fla. 4th DCA 2008).

68. For all the reasons set forth in Count I, American Airlines discriminated against Ms. Alshabaley on the basis of her disability in violation of FCRA § 760.10(1), both by failing to provide a reasonable accommodation and by treating her less favorably than similarly situated employees without disabilities in the terms, conditions, and privileges of her employment.

69. More than one hundred eighty (180) days have elapsed since Ms. Alshabaley filed her dual-filed charge with the FCHR without the FCHR issuing a determination, entitling Ms. Alshabaley to bring this action. Fla. Stat. § 760.11(8).

70. As a direct and proximate result of American Airlines' unlawful discrimination, Ms. Alshabaley has suffered and continues to suffer lost wages and benefits, emotional distress, mental anguish, aggravation of her disabilities, pain and suffering, loss of enjoyment of life, and other economic and non-economic losses.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory damages, punitive damages, back pay, front pay or reinstatement, attorneys' fees and costs pursuant to Fla. Stat. § 760.11(5), and all other relief this Court deems just and proper.

## COUNT III

## RETALIATION

### Americans with Disabilities Act, 42 U.S.C. § 12203(a)

71. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 55 as though fully set forth herein.

72. Ms. Alshabaley engaged in activity protected by the ADA by: requesting reasonable accommodation; filing her initial EEOC Charge of Discrimination on September 15, 2025; filing amendments to her Charge on November 19, 2025, January 7, 2026, January 28, 2026, and March 10, 2026; and otherwise opposing discriminatory practices and asserting her rights under the ADA.

73. Following, and in response to Ms. Alshabaley's protected activity, American Airlines took materially adverse employment actions that would dissuade a reasonable employee from making or supporting a charge of discrimination, including:

a. Denying her accommodation request;

b. Compelling months of unpaid medical leave;

c. Delaying and obstructing the accommodation process;

d. Denying overtime opportunities available to similarly situated employees;

e. Denying access to the approved accommodation parking;

f. Issuing a drug test notification on January 5, 2026, without legitimate operational justification; and

g. Other actions which impacted upon the terms and conditions of her employment.

74. American Airlines retaliated against Ms. Alshabaley in violation of the ADA by taking materially adverse employment actions against her because she requested reasonable accommodation, filed an EEOC/FCHR charge and amendments thereto, and otherwise opposed unlawful disability discrimination.

75. As a direct and proximate result of American Airlines' unlawful retaliation, Ms. Alshabaley has suffered and continues to suffer lost wages and benefits, emotional distress, mental anguish, and other economic and non-economic losses.

76. American Airlines' retaliatory conduct was willful, malicious, or in reckless disregard of Plaintiff's federally protected rights, entitling her to punitive damages pursuant to 42 U.S.C. § 1981a.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory damages, punitive damages, back pay, front pay or reinstatement, attorneys' fees and costs pursuant to 42 U.S.C. § 12205, and all other relief this Court deems just and proper.

**COUNT IV**

**RETALIATION**

**Florida Civil Rights Act, Fla. Stat. § 760.10(7)**

77. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 55 as though fully set forth herein.

78. The FCRA prohibits retaliation against employees who oppose discriminatory practices or participate in any proceeding under the FCRA. Fla. Stat. § 760.10(7). Florida courts construe the FCRA's anti-retaliation provision in conformity with the ADA's.

79. For all the reasons set forth in Count III, American Airlines retaliated against Ms. Alshabaley in violation of FCRA § 760.10(7) by taking materially adverse employment actions against her because she requested reasonable accommodation, filed an EEOC/FCHR charge and amendments thereto, and otherwise opposed unlawful disability discrimination.

80. As a direct and proximate result of American Airlines' unlawful retaliation, Ms. Alshabaley has suffered and continues to suffer lost wages and benefits, emotional distress, mental anguish, and other economic and non-economic losses.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory damages, punitive damages, back pay, front pay or reinstatement, attorneys' fees and costs pursuant to Fla. Stat. § 760.11(5), and all other relief this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b) and the Seventh Amendment to the United States Constitution, Plaintiff hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF AS TO ALL COUNTS

WHEREFORE, Plaintiff Selwa Alshabaley respectfully requests that this Court enter judgment in her favor and against Defendant American Airlines, Inc., and award the following relief:

a. A declaration that Defendant's conduct violated the ADA and the FCRA;

b. An injunction directing Defendant to cease discriminatory and retaliatory practices and to implement adequate policies, training, and monitoring to prevent future violations;

c. Back pay and all lost benefits from the date of Defendant's first unlawful act through the date of judgment, with pre-judgment interest;

d. Front pay or reinstatement to Plaintiff's position with full seniority, benefits, and employment rights;

e. Compensatory damages for past and future emotional distress, mental anguish, pain and suffering, aggravation of disability, loss of enjoyment of life, and other non-economic losses, in an amount to be determined by the jury;

f. Punitive damages pursuant to 42 U.S.C. § 1981a for Defendant's willful and malicious conduct;

g. Reasonable attorneys' fees and litigation costs pursuant to 42 U.S.C. § 12205 and Fla. Stat. § 760.11(5);

h. Pre- and post-judgment interest; and

i. Such other and further relief as this Court deems just and proper.

Dated: September 3, 2026

Respectfully submitted,

/s/ Ryan D. Barack

**Ryan D. Barack**
Florida Bar No. 0148430
rbarack@employeerights.com
Jackie@employeerights.com
**Michelle Erin Nadeau**
Florida Bar No. 0060396
mnadeau@employeerights.com
Jackie@employeerights.com
**Kwall Barack Nadeau PLLC**
304 S. Belcher Rd., Suite C
Clearwater, Florida 33765
Attorneys for Plaintiff